## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, 5100 Wisconsin Avenue, NW, Suite 400, Washington, D.C. 20016, | ) ) ) ) ) ) | |
| Plaintiff | ) ) | Case No.: |
| v. | ) ) | |
| DEPARTMENT OF HEALTH & HUMAN SERVICES, Hubert H. Humphrey Building, Room 700E, 200 Independence Avenue, S.W., Washington, D.C. 20201, | ) ) ) ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF

This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and implementing regulations, seeking a declaratory judgment that Defendant has violated FOIA and the Administrative Procedure Act by failing to grant a fee waiver requested by the Physicians Committee for Responsible Medicine ("PCRM") and injunctive relief ordering Defendant to grant PCRM's fee waiver request.

## JURISDICTION AND VENUE

1.    This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has the authority to grant declaratory relief pursuant to 28 U.S.C. § 2201. This Court has the authority to award costs and attorney fees under 5 U.S.C. § 552(a)(4)(E). Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## PARTIES

2.      Plaintiff PCRM is a non-profit public health advocacy association, organized

under 501(c)(3) of the Internal Revenue Code. Among other public interest activities, PCRM

advocates for preventive medicine through good nutrition and encourages higher standards for

ethics and effectiveness in medical research. PCRM's promotion of alternatives to the use of

animals in medical education and research is part of a nationwide movement that has led, in the

past two decades, to more than three-quarters of all U.S. medical schools dropping their animal

labs for medical students. It is also part of PCRM's mission to educate the public about the

people and decisions that lead to the government spending vast sums on animal research methods

that are antiquated, not properly validated as required by law, and not reasonably reliable for

making determinations relevant to human health. To that end, PCRM distributes a quarterly

publication, *Good Medicine*, to its membership base of more than 160,000 physician and

layperson members and provides an Internet version free of charge on its Web site. Additionally,

PCRM's staff includes a communications department that promotes the organization's activities

through news conferences and television, radio, and print media.

3.      Defendant Department of Health & Human Services ("HHS") is a United States

agency that includes both the Food and Drug Administration ("FDA") and the National Institute

of Environmental Health Sciences ("NIEHS"), which itself is a subsidiary of the National

Institutes of Health ("NIH").

## STATEMENT OF FACTS

4.      FDA and NIEHS are two of the fifteen agency members of the Interagency

Coordinating Committee on the Validation of Alternative Methods ("ICCVAM"), which was

established in 1997 to coordinate the development, validation, and acceptance of alternative

analytical procedures and toxicological testing methods that incorporate non-animal testing

methods. ICCVAM, Validation and Regulatory Acceptance of Toxicological Methods 55 (1997),

http://iccvam.niehs.nih.gov/docs/guidelines/validate.pdf.

     5.     Despite its government mandate, ICCVAM considered fewer than a dozen test

methods, and validated less than half, in its first eight years of existence. *See* ICCVAM, Test

Method Evaluations (2005), http://iccvam.niehs.nih.gov/methods/review.htm. Further, these few

methods validated by ICCVAM pertain to refinement and reduction, rather than replacement, of

animal testing methods. *See id.* In contrast, the European Centre for the Validation of Alternative

Methods ("ECVAM"), ICCVAM's European counterpart, has validated more than twenty testing

methods, some of which replace animal methods, in the past eight years. *See* ECVAM, Validated

Methods (2006), http://ecvam.jrc.it/f_home.cfm?voce=m&idvoce=3.

     6.     ICCVAM does not meet in public and its internal documents, and the documents

regarding ICCVAM held by its member agencies, never have been made public.

     7.     On August 26, 2005, PCRM submitted nearly identical FOIA requests to four

ICCVAM member agencies: FDA, NIEHS, the Environmental Protection Agency ("EPA"), and

the Consumer Product Safety Commission ("CPSC"). Each request sought records, not already

available to the public, of ICCVAM's activities, including:

> 1.     Agendas, minutes, notes, and between-meeting communications among members of the Interagency Coordinating Committee on the Validation of Alternative Methods (ICCVAM) and its various Working Groups (e.g., Ocular Toxicology, Developmental Toxicity, etc.).

> 2.     Communications with other US federal agencies regarding the solicitation, selection, appointment, and qualifications of agency representatives to ICCVAM and its Working Groups.

> 3.     Communications with representatives of Integrated Laboratory Systems, Inc. (ILS), including calls for tender, requests

for proposals, contracts, memoranda of understanding, etc., relating to ICCVAM.

4.    Communications with Dr. William Stokes and NIEHS management, NICEATM staff and contractors, and government agencies and officials, both domestically and internationally (e.g., ECVAM, OECD, etc.) related to the solicitation, selection and appointment of agency representatives to ICCVAM and its Working Groups.

5.    Any documents and correspondence relating to the process and the reasoning by which [the agency] chose its ICCVAM representative.

8.    Each request detailed the specific factual bases pursuant to which PCRM was entitled to a fee waiver under applicable law and regulations.

9.    By letter dated August 31, 2005, FDA acknowledged receipt of the FOIA request.

10.    On August 31, 2005, by telephone, NIEHS acknowledged receipt of the FOIA request and stated that, in the absence of a fee waiver, NIEHS would categorize PCRM as a "public interest" or "other" requester subject to certain fees for duplication of records and search time. NIEHS also notified PCRM of its right to pursue a fee waiver.

11.    On September 7, 2005, by letter, NIEHS reiterated its statements of August 31, 2005.

12.    On September 8, 2005, representatives of PCRM, FDA, HHS, EPA, and CPSC participated in a telephone conference in which PCRM agreed to restrict the scope of its requests for records, with respect to all agencies except NIEHS, to internal agency communications regarding ICCVAM and communications between each agency and NIEHS. As modified, EPA produced records responsive to the request and agreed that no fee was due from PCRM. CPSC similarly produced responsive documents and did not charge a fee. With respect to NIEHS,

PCRM maintained its request as originally submitted. PCRM also confirmed its intent to pursue fee waiver requests from all agencies.

13.    On September 15, 2005, by letter, NIEHS notified PCRM that it had referred PCRM's fee waiver request to NIH for a decision.

14.    By letter dated January 31, 2006, Darlene Christian, Freedom of Information Officer of the Public Health Service, denied PCRM's fee waiver request with respect to both FDA and NIEHS on the grounds that:

- PCRM had "not demonstrated, with any specificity, how disclosure of the information is likely to contribute significantly to the public's understanding of the operation or activities of the government; and how disclosure would reveal any meaningful information about government operations or activities that is not already public knowledge";

- PCRM's intent to share information with its own members "indicates that release would not benefit the general public, but rather a targeted audience"; and

- "NIEHS, on behalf of ICCVAM, makes a great deal of its activities public by posting information on the agency's website."

15.    On February 9, 2006, PCRM appealed the denial of its fee waiver request. PCRM reminded HHS that the requested records concerned meetings and activities closed to the public, that PCRM had not requested publicly available information, and that HHS had failed to establish that the records sought were available on the NIEHS Web site. In response to HHS's assessment that disclosure would benefit only a target audience and not the general public, PCRM explained that it would publicize the information to the entire media spectrum and that it expected other media outlets to follow the story.

16.     HHS acknowledged receipt of the appeal by latter dated February 10, 2006.

17.     On May 17, 2006, HHS denied PCRM's appeal and notified PCRM of its right to seek judicial review.

18.     PCRM has exhausted the applicable administrative remedies with respect to its fee waiver request. *See* 5 U.S.C. § 552(a)(6).

### PLAINTIFF'S CLAIMS FOR RELIEF

### CLAIM ONE
#### (Failure to grant fee waiver request)

19.     Plaintiff realleges and incorporates by reference all preceding paragraphs.

20.     FOIA states that "[d]ocuments shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii).

21.     FDA and NIEHS regulations implementing FOIA state that fees will be waived or reduced if "(1) [disclosure is] in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the Government; and (2) [i]t is not primarily in the commercial interest of the requester." 21 C.F.R. § 20.46(a); 45 C.F.R. § 5.45(a).

22.     Plaintiff properly requested a fee waiver for the request of records within HHS control.

23.     Plaintiff is entitled by law to a fee waiver because disclosure of the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in Plaintiff's commercial interest.

24.     Therefore, Defendant violated FOIA by not granting Plaintiff's fee waiver request.

## CLAIM TWO
### (Violation of the Administrative Procedure Act)

25.     Plaintiff realleges and incorporates by reference paragraphs 1–18 and 20–21.

26.     Plaintiff properly requested a fee waiver for the request of records within HHS control.

27.     Plaintiff is entitled by law to a fee waiver because disclosure of the information is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in Plaintiff's commercial interest.

28.     Defendant's failure to grant Plaintiff's fee waiver request constitutes agency action unlawfully withheld in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. Defendant's failure in this matter is arbitrary, capricious, an abuse of discretion, not in accordance with the law, and without observance of procedure required by law, all in violation of the APA. *See id.* § 706(2)(A), (D).

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court:

A.      declare that Defendant has violated FOIA and the APA by failing to grant PCRM's fee waiver request;

B.      order Defendant to grant PCRM's fee waiver request;

C.      award PCRM its reasonable attorneys fees and litigation costs incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

D.      grant such other relief as the Court may deem just and proper.

Respectfully submitted,

_____

Daniel Kinburn
PHYSICIANS COMMITTEE FOR
  RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 308
(202) 686-2155 (fax)

Dated: _____