UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE,<br><br>      Plaintiff<br><br>      v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>      Defendant. | )<br>)<br>)<br>)<br>)<br>)  Case No. 06-1392 JDB<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
<u>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I. INTRODUCTION .......................................................................................................... 1
II. STATEMENT OF THE ISSUES ................................................................................... 1
III. SUMMARY OF THE ARGUMENT ............................................................................ 1
IV. STATEMENT OF FACTS ............................................................................................ 4
V. LEGAL ARGUMENT .................................................................................................. 6
    A. The Summary Judgment Standard ..................................................................... 6
    B. PCRM is Entitled to Summary Judgment with Respect to Claim One Because HHS has Failed to Grant PCRM's Fee Waiver Request ....................................... 6
        1. Disclosure of the Records is in the Public Interest Because it is Likely to Contribute Significantly to Public Understanding of the Operations or Activities of the Government ................................................................. 7
            a. PCRM's Request Pertains to the Operations of Activities of the Federal Government ................................................................... 7
            b. Disclosure of the Requested Records Would Reveal Meaningful Information about Government Operations ............................. 8
            c. Disclosure of the Requested Records Will Advance the Understanding of the General Public as Distinguished from a Narrow Segment of Interested Persons ................................................................................. 9
            d. Any Contribution to the Public's Knowledge of Government Operations by the Release of the Information Will be Significant ....................... 12
        2. Disclosure is Not primarily in the Requester's Commercial Interest ............... 13
            a. Disclosure Would not Further a Commercial Interest of PCRM or Someone on Whose Behalf PCRM is Acting ............................ 13
            b. The Public Interest in Disclosure Outweighs any Commercial Interest in Disclosure by PCRM or its Members ............................................. 14
    C. PCRM is Entitled To Summary Judgment with Respect to Claim Two Because HHS's Denial of PCRM's Fee Waiver Request was Arbitrary And Capricious ..... 15
VI. CONCLUSION ............................................................................................................ 16

## TABLE OF AUTHORITIES

### CASES

*Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994) .......................................... 10, 11
*Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984) .................................................. 15
*Ettlinger v. FBI*, 596 F. Supp. 867, 876 (D.C. Mass. 1984) .................................................. 10, 14
*Eudey v. CIA*, 478 F. Supp. 1175, 1177 (D.D.C. 1979) ................................................................. 9
*Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) .................................. 1, 7
*Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 54 (D.D.C. 2000) ................... 6
*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) .................................................. 6
*McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987) ................ 12
*McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375 F.3d 1182, 1186-87 (D.C. Cir. 2004)
    ................................................................................................................................................ 15
*Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851, 856-57 (D. Colo. 1994) ........................ 10
*Project on Military Procurement v. Dep't of Navy*, 710 F. Supp. 362, 368 (D.D.C. 1989) ............ 9

### STATUTES

42 U.S.C. § 285l-3(b)(5) ................................................................................................................. 4
5 U.S.C. § 552(a)(4)(A)(iii) ..................................................................................... 1, 6, 7, 13, 15, 16
5 U.S.C. § 706(1) ......................................................................................................................... 16
5 U.S.C. § 706(2) ................................................................................................................... 15, 16

### FEDERAL RULES

Fed. R. Civ. P. 56(c) ....................................................................................................................... 6

### FEDERAL REGULATIONS

45 C.F.R. § 5.45(a)(1) (2006) ......................................................................................................... 6
45 C.F.R. § 5.45(b) ......................................................................................................................... 7
45 C.F.R. § 5.45(b)(1) ..................................................................................................................... 7
45 C.F.R. § 5.45(b)(2) ..................................................................................................................... 8
45 C.F.R. § 5.45(b)(3) ..................................................................................................................... 9
45 C.F.R. § 5.45(b)(4) ................................................................................................................... 12
45 C.F.R. § 5.45(c) ....................................................................................................................... 13

**I.     INTRODUCTION**

The Physicians Committee for Responsible Medicine ("PCRM") seeks summary judgment against the Department of Health and Human Services ("HHS") for HHS's failure to grant PCRM's request for a waiver of fees associated with its request for records under the Freedom of Information Act ("FOIA").

**II.    STATEMENT OF THE ISSUES**

PCRM alleges that HHS has failed to grant a fee waiver to which PCRM is entitled under FOIA. FOIA provides that an agency shall furnish documents at no cost or reduced cost if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. 5 U.S.C. § 552(a)(4)(A)(iii) (2006). The issue before this Court is whether PCRM's request comports with the regulatory factors that HHS considers in granting such a public interest fee waiver. PCRM asserts that on the undisputed facts, it is entitled to judgment as a matter of law.

**III.   SUMMARY OF THE ARGUMENT**

FOIA requires HHS to furnish documents at no cost or reduced cost if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. *Id.* Congress's intent in including this provision was to "ensure that [FOIA] be liberally construed in favor of waivers for noncommercial requesters." *Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1312 (D.C. Cir. 2003) (citation omitted). PCRM is entitled to a fee waiver because its request for records meets the statutory and regulatory factors to be considered under FOIA.

Disclosure of the requested records is likely to contribute significantly to public understanding of the operations of the government because all of the requested records pertain to the activities of, and agency participation in, the Interagency Coordinating Committee on the Validation of Alternative Methods ("ICCVAM"), a government body. (Pippin Decl. ¶¶ 8–9; R. at 00011–12, 00015–16.) The stated purpose of the request is to determine how ICCVAM "is carrying out its statutory mandate to 'reduce, refine, or replace the use of animals in testing.'" (R. at 00012, 00016.) Disclosure will reveal meaningful information about government operations because PCRM seeks records, not yet publicly available, that illuminate why ICCVAM has failed to meets its congressional mandate of validating scientific procedures and tests that reduce, refine, or replace the use of animals. (*Id.* at 00012, 00016.) Disclosure is all the more meaningful to the public because ICCVAM's meetings and the requested documents have not been made available to the public. (*See* Answer 6; Pippin Decl. ¶ 8) Thus, disclosure of the requested records is the only way for the public to understand the workings of this unique federal agency—which consists of members from fifteen other agencies—and the reasons for its failure to effectively accomplish its mission.

PCRM has the knowledge to understand the requested information, and its intended use of the information will disseminate the information among the public. PCRM intends to disseminate the information to its membership, via its free medical magazine, and to the general public, via press releases to the entire media spectrum. (R. at 00136.) PCRM's ability to disseminate its message far beyond its membership is confirmed by the administrative record, which includes references to PCRM's work in several publications that are national in scope. (*See id.* at 00038, 00041–48.) PCRM has both a staff of committed doctors and researchers with knowledge in ICCVAM's subject area as well as a staff of writers and editors skilled at

effectively conveying information to the public. (Pippin Decl. ¶ 5; R. at 00012–13, 00017.) The contribution to the public knowledge from disclosure will be significant because the requested records are not publicly available. (R. at 00012, 00016.) ICCVAM has been meeting for nearly a decade, but certain details of its activities, including records of the type requested by PCRM, never have been made available to the public (*see* Answer ¶ 6; Pippin Decl. ¶¶ 6, 8; R. at 00012, 00016), and those that are made available by the member agencies do not accurately portray ICCVAM's achievements (*see* R. at 00033).

Neither PCRM nor its members would benefit commercially from the disclosure of the requested information. PCRM is a non-profit organization (Pippin. Decl. ¶ 2; R. at 00012, 00016, 00127–28) and intends to use the information not for commercial gain (Pippin Decl. ¶ 10), but to "promulgate [the] information as widely as possible, in order to prod ICCVAM to promote its congressionally set mission more vigorously and effectively" (R. at 00136). PCRM plans to accomplish this by publishing the information in its free publication (*see id.* at 00012, 00016, 00136) and throughout other news media outlets (*id.* at 00136). Therefore, PCRM accurately stated in its request that it had "no commercial interest in the disclosure" of the requested information. (*Id.* at 00013, 00017.) PCRM's sole interest in requesting records is to advance the public interest of educating the public about ICCVAM's activities and its failure to effectively carry out its mission. Therefore, the public interest in disclosure greatly outweighs any commercial interest of PCRM or its members.

Because PCRM has met the statutory and regulatory factors to qualify for a public interest fee waiver, this Court should grant PCRM's motion for summary judgment and enter an order enjoining HHS to grant PCRM's fee waiver request. For the same reason, this Court also should set aside as arbitrary and capricious HHS's denial of PCRM's fee waiver request.

IV.     **STATEMENT OF FACTS**

Plaintiff PCRM is a non-profit public health advocacy association, organized under 501(c)(3) of the Internal Revenue Code. (Pippin Decl. ¶ 2.) Among other public interest activities, PCRM advocates for preventive medicine through good nutrition and encourages higher standards for ethics and effectiveness in medical research. (*Id.*) PCRM's promotion of alternatives to the use of animals in medical education and research is part of a nationwide movement that has led, in the past two decades, to more than 85% of all U.S. medical schools dropping from their curricula courses that involve laboratory exercises on live animals. (*Id.* ¶ 3.)

Part of PCRM's mission is to educate the public about the people and decisions that lead to the government spending vast sums on animal research methods that are antiquated, not properly validated, and not reasonably reliable for making determinations relevant to human health. (*Id.* ¶ 4.) To that end, PCRM relies in part on its communications department, which promotes the organization's activities through press releases, news conferences, television, radio, and print media. (*See id.* ¶ 5.)

Defendant HHS is a United States agency that includes both the Food and Drug Administration ("FDA") and the National Institute of Environmental Health Sciences ("NIEHS"), which itself is a subsidiary of the National Institutes of Health ("NIH"). (Answer ¶ 3.) FDA and NIEHS are two of the fifteen agency members of ICCVAM, which was established in 1997 to coordinate the development, validation, and acceptance of alternative analytical procedures and toxicological testing methods that incorporate non-animal testing methods. (*Id.* ¶ 4); 42 U.S.C. § 285l-3(b)(5). Despite its government mandate, ICCVAM evaluated fewer than a dozen test methods in its first eight years of existence. (Pippin Decl. ¶ 6.) Several of the methods validated by ICCVAM pertain to refinement and reduction, instead of replacement, of animal

testing methods. (*Id.*) In contrast, the European Centre for the Validation of Alternative Methods, ICCVAM's European counterpart, has evaluated and validated more than twenty testing methods, some of which replace animal methods, in the past eight years. (*Id.* ¶ 7.)

ICCVAM does not meet in public and its internal documents, and certain documents regarding ICCVAM never have been made public. (Answer ¶ 6.) Thus, to carry out its organizational mission of educating the public about issues concerning animal research methods, and specifically to determine why ICCVAM has failed to effectively validate scientific procedures and tests that reduce, refine, or replace the use of animals, PCRM submitted, on August 26, 2005, nearly identical FOIA requests to four ICCVAM member agencies: FDA, NIEHS, the Environmental Protection Agency, and the Consumer Product Safety Commission (Pippin Decl. ¶ 8; R. at 00011–13, 00015–17.) These requests sought records, not publicly available, that set forth ICCVAM's activities and the methods by which its members select and appoint agency representatives to ICCVAM and its Working Groups. (Pippin Decl. ¶ 8; R. at 00011–12, 00015–16.) Each request detailed the specific factual bases pursuant to which PCRM, a non-profit organization with no commercial interest in the disclosure, was entitled to a fee waiver under applicable law and regulations. (R. at 00012–13, 00016–17.)

By letter dated January 31, 2006, Darlene Christian, Freedom of Information Officer of the Public Health Service, denied PCRM's fee waiver request with respect to both FDA and NIEHS. (*Id.* at 00019–20, 00138–39.) By letter dated February 9, 2006, PCRM appealed the denial of its fee waiver request. (*Id.* at 00135–36.) By letter dated May 17, 2006, HHS denied PCRM's appeal and notified PCRM of its right to seek judicial review. (*Id.* at 00132–33.) On August 7, 2006, PCRM filed a complaint for injunctive relief ordering Defendant to grant PCRM's fee waiver request.

V.   **LEGAL ARGUMENT**

   A.   **The Summary Judgment Standard**

Entry of summary judgment is required if, viewing the evidence in the light most favorable to the nonmoving party, the evidence submitted shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. PRO. 56(c). Pursuant to Rule 56,

> In ruling on a motion for summary judgment the court must determine first whether the moving party has met its burden of production: the movant must inform the district court of the basis for its motion and identify those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. The movant need not, however, support its motion with evidence negating the opponent's claim. If the motion for summary judgment is properly supported, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. In meeting this burden, the non-movant may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial.

*Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (omissions and citations omitted).

   B.   **PCRM is Entitled to Summary Judgment with Respect to Claim One Because HHS has Failed to Grant PCRM's Fee Waiver Request**

The Freedom of Information Act provides that:

> Documents shall be furnished without any charge or at a charge reduced below the fees established under clause (ii) if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester.

5 U.S.C. § 552(a)(4)(A)(iii). *See also* 45 C.F.R. § 5.45(a)(1) (2006). Requests for public interest waivers must be reasonably specific and are judged on a case-by-case basis. *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 133 F. Supp. 2d 52, 54 (D.D.C. 2000). Nevertheless, courts must be "mindful that Congress amended FOIA to ensure that it be liberally construed in favor of waivers

6

for noncommercial requesters." *Rossotti*, 326 F.3d at 1312 (citation omitted). "In any action by a requester regarding the waiver of fees . . . , the court shall determine the matter de novo . . . [and] the court's review of the matter shall be limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). In its review, a court "owe[s] no particular deference to the [agency's] interpretation of FOIA." *Rossotti*, 326 F.3d at 1313.

      **1.**    **Disclosure of the Records is in the Public Interest Because it is Likely to Contribute Significantly to Public Understanding of the Operations or Activities of the Government**

To qualify for a statutory fee waiver, disclosure of the requested information must be "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government." 5 U.S.C. § 552(a)(4)(A)(iii). In making this determination, HHS considers four factors, addressed in detail below. *See* 45 C.F.R. § 5.45(b).

      **a.**    **PCRM's Request Pertains to the Operations of Activities of the Federal Government**

PCRM has met the first factor that HHS considers when determining whether release of records is in the public interest: "How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?" *Id.* § 5.45(b)(1). All of the requested records pertain to the activities of, and agency participation in, ICCVAM, a government body. (Pippin Decl. ¶ 9; R. at 00011–12, 00015–16.) The intent of the request was to determine how the federal government, namely ICCVAM, "is carrying out its statutory mandate to 'reduce, refine, or replace the use of animals in testing.'" (R. at 00012, 00016.) Tellingly, NIH, in an internal memorandum, "concede[d] that PCRM, by noting that the requested documents related to ICCVAM, an interagency work group, has demonstrated that the requested records pertain to the activities of the government." (*Id.* at 00032.)

7

### b. Disclosure of the Requested Records Would Reveal Meaningful Information about Government Operations

The second factor considered is whether disclosure of the requested records would reveal meaningful information about government operations. 45 C.F.R. § 5.45(b)(2). PCRM's request set forth with specificity reasons that the requested records would reveal meaningful information about government operations:

> It is also part of PCRM's mission to . . . educate the public about the people and decisions that lead to the government spending vast sums on animal research methods that are antiquated, not properly validated as required by law, and not reasonably reliable for making determinations relevant to human health.
> . . .
> [D]isclosure of the records is needed to understand the workings of ICCVAM. ICCVAM itself does not meet in public (as opposed to its workshops and expert panel meetings, which are open to the public). ICCVAM's internal documents, and the documents regarding ICCVAM held by its member agencies have never been made public. The documents we are seeking are just those that illuminate how the government operates ICCVAM exclusive of material that is currently available to the public.
> . . .
> ICCVAM has made remarkably little progress in doing what it was set up to do, "reduce, refine, or replace the use of animals in testing." This is undoubtedly caused, at least in part, because the agencies making up ICCVAM have selected representatives who do not appear to fully endorse ICCVAM's goals. How and why that happened is a question of critical importance to the public.

(R. at 00012–13, 00016–17.) In short, ICCVAM has failed to meet its congressional mandate and much of its activities are hidden from the public. Disclosure of the requested records is necessary to educate the public about the reason for this failure to properly carry out government operations. Disclosure of the requested information is especially meaningful because the information is not currently available to the public. (*Id.* at 00012, 00016). Thus, it is irrelevant that certain ICCVAM records are available on the Internet (*see id.* at 00020, 00139) because PCRM already has determined that such information is not responsive to PCRM's request.

8

HHS cannot in good faith deny that disclosure of the requested information would provide meaningful information to the public simply by categorically deeming *all* records not placed on Internet Websites exempt from disclosure under FOIA. (*See id.* at 00032.) As this Court has stated,

> Defendant cannot be permitted to deny plaintiff a fee waiver because, in theory, defendant has the ability to raise certain FOIA exemptions. It is unfair and contrary to the spirit of the FOIA to deny a financially limited requester . . . a fee waiver based on an agency determination that is speculative and unreviewable. Clearly, permitting such a result would undermine the very rationale of the fee waiver provisions and this Court's ability to review FOIA determinations made by the defendant.

*Project on Military Procurement v. Dep't of Navy*, 710 F. Supp. 362, 368 (D.D.C. 1989) (holding that nonprofit organization was entitled to fee waiver and granting summary judgment). Further, as part of the determination whether to waive fees, FOIA "does not permit a consideration of how many documents will ultimately be released. . . . [A] single document may . . . substantially enrich the public domain." *Eudey v. CIA*, 478 F. Supp. 1175, 1177 (D.D.C. 1979) (granting summary judgment in favor of plaintiff who sought court order directing agency to waive fees).

        **c.**    **Disclosure of the Requested Records Will Advance the Understanding of the General Public as Distinguished from a Narrow Segment of Interested Persons**

In analyzing the third regulatory factor, HHS considers whether the requester has the knowledge to understand the information and whether the requester's intended use of the information would be likely to disseminate the information among the public. *See* 45 C.F.R. § 5.45(b)(3). The ability to disseminate information to the public may be shown in a variety of ways, including an intent to give the information to an interested person or group that has the ability to publish it. *See, e.g., Pederson v. Resolution Trust Corp.*, 847 F. Supp. 851, 856–57 (D.

9

Colo. 1994) (granting plaintiff's motion for summary judgment and holding that plaintiff was entitled to a fee waiver). "Benefit to a population group of some size, which is distinct from the requester alone, is sufficient" to demonstrate an ability to convey information to the general public. *See Ettlinger v. FBI*, 596 F. Supp. 867, 876 (D.C. Mass. 1984) (holding that FBI's failure to grant waiver or reduction of fees was arbitrary, capricious and an abuse of discretion). *See also Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 815 (2d Cir. 1994) (finding that requester had shown that disclosure would result in a sufficient 'breadth of benefit' beyond requester's own interests).

PCRM met the requirements of this factor by setting forth, with specificity, its ability and intent to disseminate the information to PCRM's membership via its publication and beyond PCRM's membership via press releases to various media outlets:

> It is PCRM's intention to share the information gleaned from the disclosure with our over 120,000 physician and lay members through our quarterly publication "Good Medicine." . . . PCRM has both a staff of committed doctors and researchers with knowledge in the area of animal testing as well as a staff of writers and editors skilled at effectively conveying information to the public.

(R. at 00012–13, 00016–17.)

> Obviously, PCRM can publicize the information received through its own publication, which is sent to over 120,000 members. We hope and expect that the information will be picked by other media outlets, and will send out appropriate press releases for that purpose to the entire media spectrum. Thus, PCRM's goal is to promulgate information as widely as possible . . . .

(*Id.* at 00136.) The administrative record confirms PCRM's ability to disseminate information far beyond its general membership. The record contains several newspaper clips from periodicals such as the *Washington Times* (*see id.* at 00041–44) and *The Physiologist*, a publication by the American Physiological Society (*see id.* at 00045–48), as well as a reference list including numerous other publications that have reported on PCRM's message (*id.* at 00038).

In denying PCRM's waiver request, the Public Health Service asserted that PCRM's intent "to share the information with its own members indicates that release would not benefit the general public, but rather a targeted audience." (*Id.* at 00020.) Similarly, NIH characterized PCRM's observation that ICCVAM "has made remarkably little progress in doing what it was set up to do" as an indication that PCRM does not intend to educate the general public. (*Id.* at 00033.) These attempts to characterize disclosure as beneficial only to a targeted audience are misplaced. PCRM's stated purpose was to "promulgate [the] information as widely as possible, in order to prod ICCVAM to promote its congressionally set mission more vigorously and effectively." (*Id.* at 00136.) This necessarily entails the use, by PCRM, of "other media outlets . . . [and] the entire media spectrum." (*Id.*) Indeed, sharing the information with as wide an audience as possible is essential for PCRM to accomplish its organizational mission. (*See id.* at 00012, 00016, 000127–28.)

Finally, there can be no doubt that PCRM has the knowledge to understand the information requested. As PCRM stated in its request, "PCRM has both a staff of committed doctors and researchers with knowledge in the area of animal testing." (Pippin Decl. ¶ 5; R. at 00012–13, 00017.) Additionally, as confirmed by HHS (R. at 00126, 00128), PCRM publishes a free medical magazine (Pippin Decl. ¶ 5; R. at 00012, 00016, 00136).

Therefore, PCRM has demonstrated its intent and ability to use the requested information to advance the general understanding of the public, as opposed to a narrow segment of interested persons.

        **d.**     **Any Contribution to the Public's Knowledge of Government Operations by the Release of the Information Will be Significant**

FOIA's legislative history suggests that information has a higher potential to contribute to public understanding when "the information is new and supports public oversight of agency operations." *McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282 (9th Cir. 1987). As PCRM noted in its request, "it is always in the public interest to openly air the fact that a government body is not carrying out its statutory function effectively and efficiently. It is those agencies which are not carrying out their mission which most require the type of open scrutiny and debate that PCRM seeks by obtaining these documents." (R. at 00013, 00017.) HHS may not agree with PCRM's assessment that ICCVAM has failed to meet its goals (*see id.* at 00033), but the fourth regulatory factor does not call for—or allow—an agency to deny a fee waiver request because it disagrees with the requester's critique of government activities. Instead this factor requires, and PCRM has demonstrated, that the contribution to the public knowledge from disclosure of the requested records will be significant. 45 C.F.R. § 5.45(b)(4).

The contribution to the public knowledge will be significant because none of the records requested is publicly available. ICCVAM has been meeting for nearly a decade, but details of its activities, including meeting agendas, minutes, communications, contracts, and records of the type requested by PCRM never have been made available to the public. (*See* Pippin Decl. ¶ 8; R. at 00012, 00016.) Although HHS focused considerable attention on the availability of material that ICCVAM already has made available (*see* R. at 00033), PCRM requested records that are *not* available to the public (*id.* at 00012, 00016.). As stated in PCRM's appeal of the fee waiver denial, "While NIEHS may in fact make 'a great deal' of information available, HHS has failed to allege

or establish that the records sought are publicly available." (*Id.* at 00136.) HHS's unusual reasoning that because "ICCVAM does not choose its members . . . the requested information will not shed any light on how the members are chosen" (*id.* at 00033) ignores the very purpose of PCRM's request. Recognizing that ICCVAM does not choose its members (*id.* at 00013, 00017), PCRM requested specific—and not publicly available—records held by the individual member agencies and documenting the member selection process (*see id.* at 00011–12, 00015–16).

        **2.**      **Disclosure is Not primarily in the Requester's Commercial Interest**

The second part of the statutory fee waiver test requires that disclosure "is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). In evaluating the interest of the requester, HHS considers two factors: "whether [disclosure] also furthers the requester's commercial interest and, if so, whether this effect outweighs the advancement of that public interest." 45 C.F.R. § 5.45(c).

        **a.**      **Disclosure Would not Further a Commercial Interest of PCRM or Someone on Whose Behalf PCRM is Acting**

Neither PCRM nor its members would benefit commercially from the disclosure of the requested information. As stated in its request (*see id.* at 00012, 00016) and on its Web site (*id.* at 00127–28), PCRM is a non-profit organization. (*See also* Pippin Decl. ¶ 2.) PCRM intends to use the requested information not for commercial gain (*id.* ¶ 10), but to "promulgate [the] information as widely as possible, in order to prod ICCVAM to promote its congressionally set mission more vigorously and effectively" (R. at 00136). PCRM plans to accomplish this by publishing the information in its free publication (*see id.* at 00012, 00016, 00136) and throughout other news media outlets (*id.* at 00136). Therefore, PCRM accurately stated in its request that it

13

had "no commercial interest in the disclosure" of the requested information. (*Id.* at 00013, 00017.)

There is no support in the administrative record for HHS's assertion that "release of this information would benefit PCRM's commercial interest with respect to its members' medical practices, its members' efforts to obtain research funding, and sale of merchandise." (*Id.* at 00133.) The administrative record contains no evidence that HHS has attempted to discover whether PCRM's member physicians have medical practices that are in any way affected by the withheld records or seek funding for research that would benefit from their disclosure. Finally, the administrative record lacks a demonstration by HHS that release of the requested documents, in particular, would benefit PCRM's physician members or its ability to sell unrelated merchandise. Thus, the undisputed facts in the administrative record demonstrate that neither PCRM nor its members have a commercial interest in the disclosure of the requested records.

        **b.    The Public Interest in Disclosure Outweighs any Commercial Interest in Disclosure by PCRM or its Members**

PCRM's primary interest in requesting records is to advance the public interest in the manner set forth above. This public interest is meaningful and significant. Neither PCRM nor its members have a commercial interest in the disclosure of the requested records. That PCRM has a merchandise catalog does not signify, *ipso facto*, that PCRM has a commercial interest in the disclosure of the requested records. "The fact that a requester has some personal interest in the information requested is not alone dispositive of whether there will primarily be a discernible benefit to the public from its release," nor must a potential interest in such information outweigh the purpose of widely disseminating such information to the public. *Ettlinger*, 596 F. Supp. at 877. Therefore, even if PCRM had some miniscule commercial interest in the disclosure of the

14

requested records, such an interest pales in comparison to the public interest advanced by the disclosure.

There is no genuine issue as to any material fact concerning PCRM's demonstration that disclosure of the requested records is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester. *See* 5 U.S.C. § 552(a)(4)(A)(iii). Thus, PCRM is entitled to a waiver of the fees associated with its FOIA request.

### C. PCRM is Entitled To Summary Judgment with Respect to Claim Two Because HHS's Denial of PCRM's Fee Waiver Request was Arbitrary And Capricious

Claim Two of PCRM's complaint alleges that HHS's failure to grant PCRM's fee waiver request constitutes agency action unlawfully withheld in violation of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2). The APA permits a reviewing court to find unlawful and set aside actions, findings, and conclusions by an administrative agency found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). APA further permits a court to "compel agency action unlawfully withheld or unreasonably delayed." *Id.* § 706(1).

Although the underlying facts of Claim Two are the same as for Count One—HHS's failure to grant a request for fee waiver to which PCRM is entitled—the legal analysis is different. When assessing whether an agency's action is arbitrary and capricious, a court must look first to whether the intent of Congress is clear. *See Chevron, U.S.A., Inc. v. NRDC, Inc.*, 467 U.S. 837, 844 (1984). When congressional intent is clear, it must be given effect by the reviewing court. *See id.* at 842–43. Although a reviewing court should not substitute its judgment for that of the agency, it also should not "defer to the agency's conclusory or unsupported

15

suppositions." *McDonnell Douglas Corp. v. U.S. Dep't of Air Force*, 375 F.3d 1182, 1186–87 (D.C. Cir. 2004).

Here, congressional intent—that an agency grant a request for a reduction or waiver of fees when disclosure is in the public interest—is expressly set forth in the FOIA statute. *See* 5 U.S.C. § 552(a)(4)(A)(iii). HHS has failed to grant a public interest fee waiver to which PCRM is entitled and it has relied on conclusory and unsupported suppositions in doing so. Therefore, this Court should set aside HHS's decision as arbitrary, capricious, and an abuse of discretion, and compel HHS to grant PCRM's fee waiver request. *See id.* § 706(1), (2)(A).

## VI.   CONCLUSION

For all of the above stated reasons, this Court should grant this motion for summary judgment and enter an order (1) declaring that HHS has violated FOIA and the APA by failing to grant the fee waiver requested by PCRM; and (2) enjoining HHS to grant PCRM's fee waiver request.

                Respectfully submitted,

                /s/ Daniel Kinburn

                _____
                Daniel Kinburn
                PHYSICIANS COMMITTEE FOR
                 RESPONSIBLE MEDICINE
                5100 Wisconsin Avenue, N.W., Suite 400
                Washington, D.C. 20016
                Attorney for Plaintiff
                (202) 686-2210 ext. 308
                (202) 686-2155 (fax)

Dated: November 6, 2006