UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHYSICIANS COMMITTEE FOR      )
RESPONSIBLE MEDICINE,         )
                             )
        Plaintiff,           )
                             )
    v.                       ) Case No. 06-1392 JDB
                             )
DEPARTMENT OF HEALTH AND      )
HUMAN SERVICES,               )
                             )
        Defendant.           )
_____)

### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is a Freedom of Information Act suit brought by plaintiff to challenge defendant's denial of fee waiver requests that plaintiff made in two FOIA requests that were sent to components of the Department of Health and Human Services, the Food and Drug Administration and the National Institute of Environmental Health Sciences (which is one the National Institutes of Health). The FOIA requests sought documents relating to the Interagency Coordinating Committee on the Validation of Alternative Methods (ICCVAM). The alternative methods would include, among other things, alternatives to the use of animals in research.

Pursuant to Fed. R. Civ. P. 56, defendant moves the Court to enter an order granting summary judgment in favor of defendant on the grounds that no genuine issue as to any material fact exists and that defendant is entitled to judgment as a matter of law. In support of this motion, the Court is respectfully referred to

the accompanying statement of material facts as to which there is
no genuine issue and the memorandum of points and authorities in
support of defendant's motion.  A proposed order consistent with
the relief sought is also attached.  (The accompanying statement
of material facts as to which there is no genuine issue also
contains a response to plaintiff's statement of material facts as
to which plaintiff asserts that there is no genuine issue of
material fact.)

                      Respectfully submitted,

                      JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
        /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHYSICIANS COMMITTEE FOR          )
RESPONSIBLE MEDICINE,             )
                                  )
          Plaintiff,              )
                                  )
     v.                           ) Case No. 06-1392 JDB
                                  )
DEPARTMENT OF HEALTH AND          )
HUMAN SERVICES,                   )
                                  )
          Defendant.              )
_____)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND IN
OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This case involves two Freedom of Information Act requests
that plaintiff submitted in August 2005 to the Food and Drug
Administration ("FDA") and the National Institute of
Environmental Health Sciences ("NIEHS"), both components of the
Department of Health and Human Services ("HHS").  The FOIA
requests sought non-public documents in the possession of the FDA
and NIEHS that related to the operation of the Interagency
Coordinating Committee on the Validation of Alternative Methods
(ICCVAM).  A principal mission of ICCVAM is to assist in the
development of alternative test methods that "reduce, refine, or
replace the use of animals in testing."  42 U.S.C. § 2851-
3(b)(5).  Both FDA and NIEHS have representatives on the ICCVAM,
which is comprised of representatives from fifteen governmental
agencies or components of such agencies.

Before the processing of the FOIA requests, plaintiff was

advised by FDA and NIEHS that it would have to pay search and
reproduction costs (but not review costs), which were expected to
be substantial.  Plaintiff was also advised that its requests for
fee waivers were denied.  Plaintiff appealed the denial of the
fee waivers, and HHS's appellate authority affirmed the denial.
This litigation challenges that denial.  No further processing of
the FOIA requests will be performed unless plaintiff agrees to
pay the fees or this Court overrules the denials of the fee
waiver requests.

<u>SUMMARY OF ARGUMENT</u>

Before addressing the specifics of the denial of plaintiff's
fee waiver requests, it is useful to examine the legal analysis
that applies to such decisions.  In this regard, it should be
noted that review of the fee denial decision by this Court is <u>de
novo</u>; consequently, Count II of the complaint, which seeks review
under the Administrative Procedure Act, should be denied.  In the
process of <u>de</u> <u>novo</u> review, the burden of proof is on the plain-
tiff to demonstrate that it is entitled to the fee waivers.  The
Court's analysis is guided by examining the relevant statutory
provisions of the FOIA and the applicable regulations promulgated
by the entities to whom the FOIA requests were submitted. In
order for plaintiff to obtain a waiver of the search and
duplication fees, it has the burden of establishing that the
release of the information that it seeks will contribute

2

significantly to the public's understanding of the operations of the government, in this case, the operations of the ICCVAM. Although normally the identity of the requestor is not an issue when deciding whether material was properly exempted from release under the FOIA, the identity of the requestor is an issue in the fee waiver context, i.e., is the requestor someone who will disseminate the information that it seeks to the public at large, as opposed to the individual requester or a narrow group of interested persons.   Plaintiff fails both these tests.  The denial of the fee waiver requests was, therefore, correct and should be affirmed by this Court.

<u>ARGUMENT</u>

A. <u>Governing Legal Principles</u>.

Under the FOIA, a plaintiff must exhaust administrative remedies before seeking judicial review of any alleged improper withholding.  <u>See</u>, <u>e.g.</u>, <u>Wilbur v. CIA</u>, 355 F.3d 675, 676 (D.C. Cir. 2004); <u>Summers v. Department of Justice</u>, 140 F.3d 1077, 1080 (D.C. Cir. 1998); <u>Oglesby v. United States Department of the Army</u>, 920 F.2d 57, 61 (D.C. Cir. 1990). The exhaustion require-ment includes following an agency's fee regulations and, where appropriate, paying the fees assessed.  5 U.S.C. § 552(a)(3)(B); <u>Oglesby</u>, 920 F.2d at 66 & n.11, 71; <u>Judicial Watch, Inc. v. FBI</u>, 190 F. Supp. 2d 29, 33 (D.D.C. 2002).  A requester has failed to exhaust administrative remedies if the requester does not comply

3

with an agency's fee requirements.  Oglesby, 920 F.2d at 66 &
n.11, 71; Center to Prevent Handgun Violence, v. United States
Dep't of the Treasury, 981 F. Supp. 20, 23 (D.D.C. 1997);
Trueblood v. United States Dep't of the Treasury, 943 F. Supp.
64, 68 (D.D.C. 1996).  Such a failure deprives plaintiff of the
right to judicial review of his access claims.  Id.

     The only exception to this principle is if the plaintiff has
requested and is granted a waiver of the fees assessed.  Under
the FOIA, fees routinely assessable in response to an access
request shall be waived or reduced "if disclosure of the
[requested] information is in the public interest because it is
likely to contribute significantly to public understanding of the
operations and activities of the government and is not primarily
in the commercial interest of the requester."  5 U.S.C. §
552(a)(4)(A)(iii).  Disclosure must contribute to the under-
standing of the public at large, as opposed to the individual
requester or a narrow group of interested persons.  See, e.g.,
Carney v. U.S. Department of Justice, 19 F.3d 807, 814 (2d Cir.
1994)("The relevant inquiry, as we see it, is whether the
requester will disseminate the disclosed records to a reasonably
broad audience of persons interested in the subject.").  This
standard requires an individual review of each fee waiver
request.

     The current judicial review provision in the FOIA with

4

respect to agency fee waiver decisions provides that "the court shall determine the matter de novo, provided that the court's review of the matter shall be limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii).[1]  See, e.g., National Treasury Employees Union v. Griffin, 811 F.2d 644, 648 (D.C. Cir. 1987) [NTEU] (court may consider only information before agency at time of decision).

Under the fee waiver provision in the statute, plaintiff has the burden of specifically identifying the public interest to be served by the requested disclosure. McClellan Ecological Seepage Situation, 835 F.2d 1282, 1285 (9th Cir. 1987); NTEU, 811 F.2d at 647. In order to meet this burden, plaintiff must explain "with reasonable specificity how disclosure will contribute to public understanding." McClellan Ecological Seepage Situation, 835 F.2d at 1285; NTEU, 811 F.2d at 647 (requiring such an explanation under the earlier fee waiver standard).

---

1. The Freedom of Information Reform Act of 1986 specifies that fee-waiver decisions are to be reviewed de novo.  Some courts have, however, found that the decision as to which of the several categories of FOIA requesters apply to a plaintiff remains subject to review under the Administrative Procedure Act.  See Judicial Watch, Inc. v. United States Department of Justice, 112 F.Supp. 2d 5, 11-12 (D.D.C. 2000).  This case does not involve any disagreement about the category of requester that applies to plaintiff.  By proposing to charge only search and duplication fees, defendant has placed plaintiff in the category of a non-commercial requester that is not an educational or noncommercial scientific institution or a representative of the news media.  See 5 U.S.C. § 552(a)(4)(ii).  We do not understand plaintiff to be challenging this.

The HHS's FOIA fee waiver regulation, 45 C.F.R. § 5.45, which is materially the same as the FDA's fee waiver regulation (21 C.F.R. § 20.46), states that the agency will waive or reduce the fees it would otherwise charge if disclosure of the information meets both of the following tests:

(1) It is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and

(2) It is not primarily in the commercial interest of the requester.

In analyzing the public interest, HHS considers the following factors:

(1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?

(2) Would disclosure of the records reveal any meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?

(3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons? . . . .

(4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

45 C.F.R. § 5.45(a)-(b).

B. Factual Background.

NIEHS received a FOIA request from plaintiff, dated August 26, 2005, which sought various records related to ICCVAM and which also sought a fee waiver. A.R. 00011-13. FDA received a

largely similar FOIA request from plaintiff, also dated August
26, 2005.  A.R. 00015-17.  In the FOIA requests, PCRM
characterized itself as a non-profit organization that promotes
effective, ethical, and compassionate scientific research, with a
particular emphasis on animal research methods.  It described
part of its mission as educating the public on inappropriate
animal research methods.  A.R. 00012 and 00016.

Both FOIA requests summarize the legal requirements for
obtaining a fee waiver and assert that plaintiff meets these
requirements.  In addition to these bare assertions, the FOIA
requests make the following argument as to why plaintiff's FOIA
requests satisfy the requirement of showing that the release of
the information that it seeks will contribute significantly to
the public's understanding of the operations of the government,
in this case, the operations of ICCVAM:

> The purpose of this FOIA request is to
> determine how ICCVAM is carrying out its
> statutory mandate to "reduce, refine, or
> replace the use of animals in testing."  42
> U.S.C. § 2851-3(b)(5).

A.R. 00012 and 00016.

> [D]isclosure of the records is needed to
> understand the workings of ICCVAM.  ICCVAM
> itself does not meet in public (as opposed to
> its workgroups and expert panel meetings,
> which are open to the public).  ICCVAM's
> internal documents, and the documents
> regarding ICCVAM held by its member agencies
> have never been made public.  The documents
> we are seeking are just those that illuminate
> how the government operates ICCVAM exclusive

> of material that is currently available to
> the public.

A.R. 00012 and 00016.

> The contribution to public understanding from
> this disclosure will be significant. ICCVAM
> has made remarkably little progress in doing
> what it was set up to do, "reduce, refine, or
> replace the use of animals in testing." This
> is undoubtedly caused, at least in part,
> because the agencies making up ICCVAM have
> selected representatives who do not appear to
> fully endorse ICCVAM's goals. How and why
> that happened is a question of critical
> importance to the public. Further, it is
> always in the public interest to openly air
> the fact that a government body is not
> carrying out its statutory function
> effectively and efficiently. It is those
> agencies which are not carrying out their
> mission which most require the type of open
> scrutiny and debate that PCRM seeks by
> obtaining these documents. Thus, 45 C.F.R. §
> 5.45(2)(4) is satisfied.

A.R. 00013 and 00017.

Both FOIA requests argued that they met the requirement that
the disclosure advance the understanding of the general public as
distinguished from a narrow segment of interested persons. In
this regard, they asserted that:

> It is PCRM's intention to share the informa-
> tion gleaned from the disclosures with our
> over 120,000 physicians and lay members
> through our quarterly publication "Good
> Medicine." Obviously, our members are
> interested in the subjects of animal testing
> and alternatives to such testing, and PCRM
> has both a staff of committed doctors and
> researchers with knowledge in the area of
> animal testing as well as a staff of writers
> and editors skilled at effectively conveying
> information to the public.

8

A.R. 000-13 and A.R. 00016-17.

Because plaintiff's FOIA requests involved more than one public health agency, the two requests were referred to the Freedom of Information Office at the Public Health Service for a resolution of the fee waiver requests.  A.R. 00019.  The Public Health Service's FOIA officer estimated that conducting the search and duplication for the two requests would require about $100,000.  See A.R. 00022 and A.R. 00034.  To assist the Public Health Service's FOIA officer in making her decision, the NIH's Freedom of Information Officer provided the decision-maker with a memorandum analyzing the fee waiver issue.  A.R. 00030 to 00121. That memorandum explained that plaintiff, although asserting that it was "a non-profit organization that promotes effective, ethical and compassionate scientific research," is an animal rights group with close ties to the radical group People for the Ethical Treatment of Animals.  A.R. 00032, A.R. 00035-00048, and A.R. 00057.

The NIH memorandum noted, with respect to whether disclosure of the information would reveal any meaningful information about government operations or activities, that plaintiff did not address how release of the requested information would reveal anything meaningful about government operations or activities. NIH further noted that NIEHS, on behalf of ICCVAM, makes a great deal of its activities public by posting information on the

9

internet at http://iccvam.niehs.nih.gov. A.R. 00032. NIH stated that information that is not posted consists of records that would be considered predecisional in nature and not releasable pursuant to FOIA Exemption 5, which incorporates the deliberative process privilege. (Given the breadth of plaintiff's FOIA requests, defendant does not contend that all of the requested documents would be exempt under Exemption 5, see Carney, supra, 19 F.3d at 815 (it would be proper to deny a FOIA request only if the request was for patently exempt documents).)

With respect to whether the disclosure would advance the understanding of the general public as distinguished from a narrow segment of interested persons, NIH pointed out that no specific information had been presented that plaintiff had as its goal general education of the public. To the contrary, NIH argued that plaintiff stated that it intended to share the information with its own members, through its own publication. NIH explained that since plaintiff's members are those who share the group's animal rights agenda, this is not educating the general public. A.R. 00032-33. NIH also argued that because plaintiff did not proffer any viable, concrete plans to disseminate the requested information to the general public, and did not identify any specific increase in public understanding that would result from such dissemination, it failed the public interest standard. A.R. 00033.

With respect to whether there would be any significant
contribution to the public's knowledge of government operations
by the release of the information, NIH explained that plaintiff
merely asserted that ICCVAM has not made progress in meeting its
mission and then speculated as to the reason why.  NIH noted that
plaintiff did not offer any support for its statement and that
the wealth of information made public by ICCVAM demonstrated the
opposite – that it has indeed made significant progress in
meeting its mission.  A.R. 00033.

On January 31, 2006, the Freedom of Information Officer for
the Public Health Service issued a denial of plaintiff's fee
waiver request.  The denial stated that plaintiff had not
provided a convincing or substantial argument to justify a fee
waiver.  The denial explained that the requester's statements
that release of the information was in the public interest was
not a sufficient basis upon which to grant a waiver of fees.  The
denial stated that the requester had not demonstrated with any
specificity how disclosure of the information was likely to
contribute significantly to the public's understanding of the
operations or activities of the government or how disclosure
would reveal any meaningful information about government
operations or activities that were not already public knowledge.

The denial further stated that the requester's statement
that it intended to share the information with its own members

11

indicated that the release of the requested documents would not benefit the general public, but rather a targeted audience.  A.R. 00020.  (The denial also asserted that release of the requested information was in plaintiff's commercial interest, an argument that defendant is not pursuing in this Court.)

Plaintiff appealed the fee waiver denial to HHS's Deputy Assistant Secretary for Public Affairs/Media.  The appeal letter did not make any new arguments; rather, it incorporated arguments that had been made in the initial FOIA requests.  The appeal rejected HHS's statement in its initial denial letter that PCRM's intention to share information with its own members was not proof or evidence "that release would ... benefit the general public." PCRM stated that it would publicize the information received via its own publication, which is sent to over 120,000 members, and that it hoped and expected that the information would be picked up by other media outlets.  A.R. 00135-36.

HHS's appellate authority affirmed the denial of the fee waiver requests by a letter dated May 17, 2006.  A.R. 00132-33. Like the initial denial, the decision letter stated that the requester had not provided a convincing or substantial argument to justify a waiver of fees.  The denial stated that the requester had not demonstrated how disclosure of the information would likely contribute significantly to the public's under-standing of the operations or activities of the government or how

12

disclosure would reveal any meaningful information about
government operations or activities that was not already public
knowledge.  The denial further stated that there was no
demonstration that release of the documents sought by plaintiff
would advance the understanding of the general public as
distinguished from a narrow segment of interested persons.
Furthermore, the decision explained that there was no
demonstration that the requester had the ability, or the intent,
to disseminate the information to a broad segment of the
population.  Finally, the decision stated that it appeared
that release of the information would benefit the requester's
commercial interest with respect to its members' medical
practices, its members' efforts to obtain research funding, and
sale of merchandise, a point that is not being pursued by
defendant in this case.  A.R. 00132-34.  This law suit followed
the issuance of this denial.

C. <u>Analysis</u>.

There are two questions that the Court needs to resolve in
this case: (a) would the release of the requested information
contribute significantly to public understanding of the opera-
tions and activities of the government and (b) is the requestor
someone who will disseminate the information that it seeks to the
public at large, as opposed to the individual requester or a
narrow group of interested persons.  In order to qualify for a

13

fee waiver, both of these questions must be answered in the affirmative as to plaintiff's FOIA requests; however, as we explain, both questions should be answered in the negative.

> Under well-established case law, fee waiver requests must be made with "reasonable specificity," Larson v. C.I.A., 843 F.2d 1481, 1483 (D.C. Cir. 1988)(per curiam) (internal quotation marks and citation omitted), and based on more than "conclusory allegations," Nat'l Treasury Employees Union v. Griffin, 811 F.2d 644, 647 (D.C. Cir. 1987).

Judicial Watch, Inc. v. Rossotti, 326 F.3d 1309, 1312 (D.C. Cir. 2003).

Plaintiff's "public interest" argument in support of its fee waiver requests is totally conclusory, see supra at pages 7-8. Plaintiff asserts that ICCVAM has made "remarkably little pro-gress in doing what it was set up to do, 'reduce, refine, or replace the use of animals in testing.'" A.R. 00013 and 00017. Before the agency, however, plaintiff offered absolutely no further argument or evidence that this conclusion was correct, a conclusion that, given plaintiff's ties to radical animal rights groups, is suspect (i.e., it is unlikely that anything short of banning the use of animals in scientific research would satisfy plaintiff). It is also useful to note that even plaintiff concedes that ICCVAM's workshops and expert panel meetings are open to the public, A.R. 00012 and 00016, and the administrative record further shows that much information is posted by NIEHS on

14

the internet (http://iccvam.niehs.nih.gov.) and as has also been noted above, the administrative record shows that ICCVAM publishes periodic reports concerning its activities, A.R. 00049 to 00123.

Only in this Court, by the affidavit attached to plaintiff's summary judgment motion, does plaintiff attempt to correct this inadequacy: the affidavit of Dr. Pippin, at ¶¶ 6 and 7, states that the ICCVAM has in the last eight years "evaluated fewer than a dozen test methods" whereas the European Centre for the Validation of Alternative Methods in the same time period has evaluated more than twenty testing methods. Two points must be made about this affidavit. The first is that without much more information about these alleged facts one cannot draw any conclusions as to their significance. The second is that the affidavit cannot be considered by the Court, since by statute the Court's review of the fee waiver decision is limited to the record before the agency at the time of its decision. 5 U.S.C. § 552(a)(4)(A)(vii).

Recent decisions by this Court support the position that plaintiff's conclusory assertions of public interest do not merit a fee waiver. See Judicial Watch, Inc. v. U.S. Department of Justice,122 F.Supp.2d 5, 9 (D.D.C. 2000)("[S]tatements unsupported by facts are insufficient to meet the burden placed on fee-waiver requesters.") and Judicial Watch, Inc. v. U.S.

Department of Justice, 133 F.Supp.2d 52, 54 (D.D.C. 2000):

> Judicial Watch requested a public interest
> waiver in this case so that it might "promote
> accountable government . . . by disseminating
> relevant information" that would purportedly
> "benefit the public by identifying areas for
> future reform as well as deterring future
> abuses that could otherwise proliferate
> without scrutiny."  These perfunctory asser-
> tions were too "ephemeral" to satisfy the
> "reasonable specificity" standard.

Plaintiff's fee waiver requests exhibit the kind of generality that this Court found to be insufficient to support a fee waiver in Edmond Institute v. U.S. Department of Interior, Civil Action 04-1560 (D.D.C.), memorandum opinion at docket number 43 (November 6, 2006), at page 16 (plaintiff's initial FOIA request "represents the type of overly general, conclusory justification that does not support a fee waiver").  In that case, the plaintiff subsequently submitted further information that showed that it was entitled to a fee waiver; here, no such further information was submitted.

The failure of plaintiff to meet its burden of showing that the public interest supported the fee waiver is determinative of this case.  Additionally, plaintiff failed to establish that the disclosure would advance the understanding of the general public as distinguished from a narrow segment of interested persons. Here, plaintiff stated its intent to disseminate the information it obtained to its own members, who presumably support plain-tiff's opposition to the use of animals in scientific research.

16

It was reasonable, therefore, for defendant to conclude that the disclosure of the information sought by plaintiff would not advance the understanding of the general public as distinguished from a narrow segment of interested persons. See supra, at 4-5, 10-12.

CONCLUSION

For the reasons set forth above, defendant's motion for summary judgment should be granted, and plaintiff's motion for summary judgment should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR, DC Bar #498610
United States Attorney

RUDOLPH CONTRERAS, DC Bar #434122
Assistant United States Attorney
                        /s/
FRED E. HAYNES, DC Bar #165654
Assistant United States Attorney
555 4th Street, N.W., Room E-4110
Washington, D.C. 20530
202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHYSICIANS COMMITTEE FOR      )
RESPONSIBLE MEDICINE,         )
                              )
        Plaintiff,            )
                              )
    v.                        ) Case No. 06-1392 JDB
                              )
DEPARTMENT OF HEALTH AND      )
HUMAN SERVICES,               )
                              )
        Defendant.            )
_____)

STATEMENT OF MATERIAL FACTS AS
TO WHICH THERE IS NO GENUINE ISSUE

Pursuant to Local Rule 7.1(h), defendant submits its statement of material facts as to which there is no genuine issue, and defendant responds to plaintiff's statement of material facts as to which it claims that there is no genuine issue.

Defendant's Statement Of Material Facts

1.  NIEHS received a FOIA request from plaintiff, dated August 26, 2005, which sought various records related to ICCVAM and which also sought a fee waiver.  A.R. 00011-13.

2.  FDA received a largely similar FOIA request from plaintiff, also dated August 26, 2005.  A.R. 00015-17.

3.  Both FOIA requests summarize the legal requirements for obtaining a fee waiver and assert in conclusory terms that plaintiff meets these requirements.  A.R. 00011-17.

4.  In addition to these bare assertions, the FOIA requests further argued that the public interest would be served by a

response to the two requests because the purpose of the requests
is to determine how ICCVAM is carrying out its statutory mandate
to "reduce, refine, or replace the use of animals in testing,"
but no factual support for this contention was offered by
plaintiff. A.R. 00010-14.

4.  As further support for the fee waiver requests,
plaintiff argued that disclosure of the records was needed to
understand the workings of ICCVAM, although plaintiff conceded
that ICCVAM's workgroups and expert panel meetings are open to
the public. A.R. 00012 and 00016..

5.  ICCVAM also maintains an internet site where it posts
significant materials relating to its activities. A.R. 32.

6.  ICCVAM also releases periodic public reports that
address the nature of its activities and its accomplishments.
A.R. 00049-121.

7.  Plaintiff's FOIA requests asserted that ICCVAM had made
"remarkably little progress in doing what it was set up to do,
'reduce, refine, or replace the use of animals in testing,'" but
no information or material was provided to support this assertion
or to support plaintiff's further assertions that this state of
affairs was, at least in part, because "the agencies making up
ICCVAM have selected representatives who do not appear to fully
endorse ICCVAM's goals." A.R. 00013 and 00017; A.R. passim.

8.  Plaintiff offered no plan to disclose the requested

2

material to the general public; rather it stated its plan to disclose the material to its physicians and lay members through its quarterly publication "Good Medicine."  A.R. 00012-13 and 00016-17 A.R. 00016-17.

9.  Plaintiff's requests were referred to the Freedom of Information Office at the Public Health Service for a resolution of the fee waiver requests.  A.R. 00019.

10.  The Public Health Service's FOIA officer estimated that conducting the search and duplication for the two requests would require about $100,000.  See A.R. 00022 and A.R. 00034.

11.  Review of plaintiff's requests and other information available to defendant showed that plaintiff, although asserting that it was "a non-profit organization that promotes effective, ethical and compassionate scientific research," is an animal rights group with close ties to People for the Ethical Treatment of Animals.  A.R. 00032, 00035-00048, and 00057.

12.  Plaintiff presented no specific information that plaintiff had as its goal general education of the public as opposed to its members, and since plaintiff's members are those who share the group's animal-rights agenda, this is not educating the general public.  A.R. 00032-33.

13.  Plaintiff did not proffer any viable, concrete plans to disseminate the requested information to the general public and did not identify any specific increase in public understanding

3

that would result from such dissemination.  A.R. 00033.

14.  On January 31, 2006, the Freedom of Information Officer for the Public Health Service issued a denial of plaintiff's fee waiver request.  A.R. 00019-20.

15.  The denial stated that plaintiff had not provided a convincing or substantial argument to justify a fee waiver, that the requester's statements that release of the information was in the public interest was not a sufficient basis upon which to grant a waiver of fees, and that the requester had not demon-strated with any specificity how disclosure of the information was likely to contribute significantly to the public's under-standing of the operations or activities of the government or how disclosure would reveal any meaningful information about government operations or activities that were not already public knowledge.  Id.

16.  The denial further stated that the requester's statement that it intended to share the information with its own members indicated that the release of the requested documents would not benefit the general public, but rather a targeted audience.  Id.

17.  plaintiff appealed the fee waiver denial to HHS's Deputy Assistant Secretary for Public Affairs/Media, but the appeal letter did not make any new arguments.  It merely incorporated arguments that had been made in the initial FOIA

4

requests and stated that it hoped and expected that the information it obtained would be picked up by other media outlets. A.R. 00135-36.

18. HHS's appellate authority affirmed the denial of the fee waiver requests by a letter dated May 17, 2006, A.R. 00132-33, stating that the requester had not provided a convincing or substantial argument to justify a waiver of fees.

## Defendant's Response to Plaintiff's
## Statement Of Material Facts

Paragraph (¶) 1. Plaintiff PCRM is a non-profit public health advocacy association, organized under 501 (c)(3) of the Internal Revenue Code. (Pippin Decl.¶ 2.)

Response. Since Dr. Pippin's declaration is not part of the administrative record before the agency, it can not be relied on for the truth of the assertions in this paragraph, which are therefore denied, except that it is admitted that plaintiff is a non-profit organization.

¶ 2. PCRM advocates for preventive medicine through-good nutrition and encourages higher standards for ethics and effectiveness in medical research. (*Id.*)

Response. Since Dr. Pippin's declaration is not part of the administrative record before the agency, it can not be relied on for the truth of the assertions in this paragraph, and the assertions, lacking support in the record as required by L.Cv.R. 56.1; are therefore denied on that basis.

¶ 3. PCRM's promotion of alternatives to the use of animals in medical education and research is part of a  nationwide movement that has led, in the past two decades, to more than 85% of all U.S. medical schools dropping from their curricula courses that involve laboratory exercises on live animals. (*Id*.¶ 3.)

Response.  See the response to paragraph 2 above.

¶ 4.  Part of PCRM's mission is to educate the public about the people and decisions that lead to the government spending vast sums on animal research methods that are antiquated, not properly validated as required by law, and not reasonably reliable for making determinations relevant to human health. (*Id*. ¶I 4.)

Response.  See the response to paragraph 2 above.

¶ 5.  PCRM's staff includes committed doctors and researchers with knowledge in the area of animal testing and a communications department that promotes the organization's activities through press releases. news conferences. television, radio, and print media. ( *Id. ¶ 5.*)

Response.  See the response to paragraph 2 above.

¶ 6.  PCRM publishes a free medical magazine called Good Medicine. (Id.)

Response.  See the response to paragraph 2 above; it should be noted, however, that there is evidence in the administrative record that plaintiff publishes a quarterly magazine, called Good

Medicine, that is sent to its members.

¶ 7.  PCRM's work has been discussed in *Washington Times, The Physiologist,* and a number of other publications. (*Id.* at 00038, 00041-48.)

Response.  Denied in substantial part.  To the extent that the cited materially discusses plaintiff's activities, the discussion appears to be critical of plaintiff, and most of the cited material does not mention plaintiff.  A.R. 00038, 00041-48.

¶ 8. Defendant HHS is a United States agency that includes both the Food and Drug Administration ("FDA") and the National Institute of Environmental Health Sciences ("N1EHS" ), which itself is a subsidiary of the National Institutes of Health ("NIH"). (Answer ¶ 3.)

Response.  Admitted.

¶ 8. (This is the second paragraph in plaintiff's statement of material facts that is numbered 8.)  FDA and NIEHS are two of the fifteen agency members of the Interagency Coordinating Committee on the Validation of Alternative Methods ("ICCVAM") which was established in 1997 to coordinate the development, validation, and acceptance of alternative analytical procedures and toxicological testing methods that incorporate non-animal testing methods. ( Id. ¶ 4); 42 U.S.C. § 2851-3(b)(5).

Response.  The Court is respectfully referred to the cited statute, which is the best evidence of its contents.

7

¶ 9.  In its first eight years of existence, ICCVAM evaluated fewer than a dozen test methods. (Pippin Decl.¶ 6.)

Response.  Since Dr. Pippin's declaration is not part of the administrative record before the agency, it can not be relied on for the truth of the assertions in this paragraph, and the assertions, lacking support in the record as required by L.Cv.R. 56.1; are therefore denied on that basis.

¶ 10.  Several of the methods validated by ICCVAM pertain to refinement and reduction, rather than replacement, of animal testing methods. (*Id.*)

Response.  See the response to paragraph 9 above.

¶ 11.  The European Centre for the Validation of Alternative Methods has evaluated and validated more than twenty testing methods, some of which replace animal methods. in the past eight years. (*Id.* ¶ 7.)

Response.  See the response to paragraph 9 above.

¶12.  ICCVAM does not meet in public and certain ICCVAM documents are not publicly available. (Answer ¶ 6.)

Response.  Admitted.

¶ 13.  On August 26, 2005, PCRM submitted FOIA requests to four ICCVAM member agencies: FDA, NIEHS, the Environmental Protection Agency, and the Consumer Product Safety Commission. (Pippin Decl. ¶ 8: R. at 00011-13; 00015-17.) These requests sought records, not publicly available, that set forth ICCVAM's

8

activities and the methods by which its members select and appoint agency representatives to ICCVAM and it Working Groups. (Pippin Decl. ¶ 8; R. at 00011-12. 00015-16.)

Response.  Dr. Pippin's declaration cannot be relied on to establish the truth of the allegations in this paragraph.  The Court is referred to the two FOIA requests, which are the best evidence of their contents; however, defendant admits that the two FOIA sought non-public documents relating to some of ICCVAM's activities and operations.

¶ 14.  The requested records pertain to government operations. (Pippin Decl.¶ 9; see also R. at 00032)

Response.  Admitted, except that it is denied that Dr. Pippin's declaration can be relied on as support for this paragraph.

¶ 15.  PCRM has no commercial interest in the requested records. (Pippin Decl.¶ 10.)

Response.  Dr. Pippin's declaration can be used as support for the proposition – the declaration is not part of the administrative record.  Defendant is not, however, contending before this Court that plaintiff has a commercial interest in the release of the documents.

¶ 16.  By letter dated January 31, 2006, Darlene Christian, Freedom of Information Officer of the Public Health Service, denied PCRM's fee waiver request with respect to both FDA and

9

NIEHS. (R. at 00019-20. 00138-39.)

    <u>Response</u>.  Admitted.

    <u>¶ 17</u>.  By letter dated February 9, 2006, PCRM appealed the denial of its fee waiver request. (*Id.* at 00135-36.)

    <u>Response</u>.  Admitted.

    <u>¶ 18</u>.  By letter dated May 17, 2006, HHS denied PCRM's appeal and notified PCRM of its right to seek judicial review. (Answer ¶17.)

    <u>Response</u>.  Admitted.

                Respectfully submitted,

                JEFFREY A. TAYLOR, DC Bar #498610
                United States Attorney

                RUDOLPH CONTRERAS, DC Bar #434122
                Assistant United States Attorney
                       /s/
                FRED E. HAYNES, DC Bar #165654
                Assistant United States Attorney
                555 4th Street, N.W., Room E-4110
                Washington, D.C. 20530
                202.514.7201

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

PHYSICIANS COMMITTEE FOR          )
RESPONSIBLE MEDICINE,             )
                                  )
          Plaintiff,              )
                                  )
     v.                           ) Case No. 06-1392 JDB
                                  )
DEPARTMENT OF HEALTH AND          )
HUMAN SERVICES,                   )
                                  )
          Defendant.              )
_____)

ORDER

Upon consideration of defendant's motion for summary judgment, plaintiff's motion for summary judgment, and the entire record in this case, it is this ____ day of _____, 2007,

ORDERED that defendant's motion for summary judgment is granted; and it is further

ORDERED that plaintiff's motion for summary judgment is denied; and it is further

ORDERED that this case is dismissed with prejudice.  This is a final, appealable order.

UNITED STATES DISTRICT COURT

Copies to counsel of record

11