**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE,<br><br>　　　　Plaintiff<br><br>　　　v.<br><br>DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 06-1392 JDB<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN
SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND IN
<u>OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1
II.    STATEMENT OF FACTS .................................................................................... 1
III.   ARGUMENT......................................................................................................... 1
       A.   PCRM has demonstrated, with reasonable specificity, that release of the requested information would advance the understanding of the general public as distinguished from a narrow segment of interested persons ............................................................. 3
       B.   PCRM has demonstrated, with reasonable specificity, that release of the requested information contribute significantly to public understanding of the operations or activities of the government..................................................................................... 5
IV.    CONCLUSION...................................................................................................... 7

**TABLE OF AUTHORITIES**

**CASES**
Judicial Watch, Inc. v. U.S. Dep't of Justice, 185 F. Supp. 2d 54, 62 (D.D.C. 2002).................... 4

**STATUTES**
5 U.S.C. § 704................................................................................................................................ 2
5 U.S.C. § 706(2)(A)..................................................................................................................... 2

**REGULATIONS**
45 C.F.R. § 5.45(a)................................................................................................................... 1, 2
45 C.F.R. § 5.45(b)(3)........................................................................................................... 2, 3, 4
45 C.F.R. § 5.45(b)(4)....................................................................................................... 2, 3, 4, 7

**I.    INTRODUCTION**

This memorandum is submitted in reply to the Memorandum of Points and Authorities in Support of Defendant's Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment. The Physicians Committee for Responsible Medicine ("PCRM") seeks summary judgment against the Department of Health and Human Services ("HHS") for HHS's failure to grant PCRM's request for a waiver of fees associated with its requests, filed pursuant to the Freedom of Information Act ("FOIA"), for records relating to the operation of the Interagency Coordinating Committee on the Validation of Alternative Methods ("ICCVAM").

**II.   STATEMENT OF FACTS**

PCRM respectfully refers this Court to the Statement of Facts contained in the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment.

**III.  ARGUMENT**

HHS's FOIA fee waiver regulation states that the agency will waive or reduce the fees it would otherwise charge if disclosure of the information (1) "is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (2) [i]t is not primarily in the commercial interest of the requester." 45 C.F.R. § 5.45(a). In analyzing the public interest test, HHS considers the following factors:

> (1) How, if at all, do the records to be disclosed pertain to the operations or activities of the Federal Government?
>
> (2) Would disclosure of the records reveal any meaningful information about government operations or activities? Can one learn from these records anything about such operations that is not already public knowledge?
>
> (3) Will the disclosure advance the understanding of the general public as distinguished from a narrow segment of interested persons? Under this factor we may consider whether the requester is in a position to contribute to public understanding. For example, we may consider whether the requester has such knowledge or expertise as may be necessary to understand the information, and

1

> whether the requester's intended use of the information would be likely to disseminate the information among the public. . . .
>
> (4) Will the contribution to public understanding be a significant one? Will the public's understanding of the government's operations be substantially greater as a result of the disclosure?

*Id.* § 5.45(b).

> In support of its motion for summary judgment, Defendant states,
>
> There are two questions that the Court needs to resolve in this case: (a) would the release of the requested information contribute significantly to public understanding of the operations and activities of the government and (b) is the requestor someone who will disseminate the information that it seeks to the public at large, as opposed to the individual requester or a narrow group of interested persons.

(Def. Summ. J. Mot. 13.) Thus, Defendant relies solely on factors 3 and 4 of the public interest test, *see* 45 C.F.R. § 5.45(b)(3)–(4), to justify its fee wavier denial, thereby conceding that the requested records are not in PCRM's commercial interest, *see id.* § 5.45(a)(2); the requested records pertain to the activities of the government, *see id.* § 5.45(b)(1); and disclosure of the requested records would reveal meaningful information about government operations or activities, *see id.* § 5.45(b)(2). As set forth below, PCRM has met the requirements of 5 C.F.R. § 5.45(b)(3)–(4) and therefore is entitled to a fee waiver.[1]

---

[1] Defendant asserts, without citing any authority, that "it should be noted that review of the fee denial decision by this Court is *de novo*; consequently, Count II of the complaint, which seeks review under the Administrative Procedure Act [("APA")], should be denied." (Def. Summ. J. Mot. 2.) The APA requires a reviewing court to find unlawful and set aside final actions, findings, and conclusions by an administrative agency that are found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Here, there is no question that Defendant's denial of a fee waiver request constitutes final agency action. *See id.* § 704. This Court need not deny PCRM's APA claim simply because the FOIA mandates a particular standard of review, nor has Defendant cited any relevant law dictating otherwise.

### A.  PCRM has demonstrated, with reasonable specificity, that release of the requested information would advance the understanding of the general public as distinguished from a narrow segment of interested persons

In its initial requests, PCRM set forth its ability and intent to disseminate the information to PCRM's membership via its quarterly publication and beyond PCRM's membership via its staff of writers and editors:

> It is PCRM's intention to share the information gleaned from the disclosure with our over 120,000 physician and lay members through our quarterly publication "Good Medicine." . . . PCRM has both a staff of committed doctors and researchers with knowledge in the area of animal testing as well as a staff of writers and editors skilled at effectively conveying information to the public.

(A.R. at 00012–13, 16–17.) Upon denial of the fee wavier request, PCRM discussed its intent and ability to disseminate the information to the public via press releases and media coverage:

> We hope and expect that the information will be picked by other media outlets, and will send out appropriate press releases for that purpose to the entire media spectrum. Thus, PCRM's goal is to promulgate information as widely as possible to prod ICCVAM to promote its congressionally set mission more vigorously and effectively.

(*Id.* at 00136.) Additionally, PCRM's Website provides the general public access to its publication (*id.* at 00129), information on "Upcoming Events" (*id.* at 00127), and a "Media Center" (*id.* at 00128), all of which PCRM uses to reach beyond its membership.

The administrative record confirms that these methods serve PCRM in conveying its message to publications well beyond its membership. In addition to newspaper clippings from the *Washington Times* (*see id.* at 00041–44) and *The Physiologist* (*see id.* at 00045–48), the record includes an article whose reference list cites PCRM's activities at least a half-dozen times in publications such as *Organizational Trends* (reference 1), *Toronto Globe & Mail* (reference 3), *Nutrition Today* (reference 7), and *Medical World News* (reference 9) and news releases by the American Medical Association (reference 10) and the American Dietetic Association

3

(reference 8). (*Id.* at 00035–38.) Despite Defendant's claims to the contrary, it is irrelevant whether these sources agree with PCRM's message; the proper analysis mandated by the regulation is whether the information will reach the general public as opposed to a narrow segment of interested persons. *See* 45 C.F.R. § 5.45(b)(3). The administrative record answers this question with a resounding yes.

Defendant asserts that PCRM did not "proffer any viable, concrete plans to disseminate the information to the general public." (Def. Summ. J. Mot. 10; *see also id.* 11–13, 16.) However, Defendant did not, at any time, request detailed information on PCRM's proposed dissemination plan. Nor could PCRM, given its multiple focus areas (*see* A.R. at 00127–28) and the diverse group to whom those areas apply (*e.g.*, physicians, scientists, laypersons), provide extensive information on a dissemination plan without knowing the content of the records in Defendant's possession. Nonetheless, PCRM did provide further detail, to the extent that it could, in its appeal letter (*see id.* at 00136) to demonstrate its ability to convey information widely to the general public, as the plaintiff did in *Edmond Institute v. U.S. Dep't of Interior*, No. 04-1560, 2006 WL 3059889, at *8–9 (D.D.C. Oct. 30, 2006).

By demonstrating, with reasonable specificity, its intent and ability to use its publication, press releases to the media, and staff of writers and editors to reach the public (A.R. 00012–13, 00016–17, 136), PCRM has established that release of the requested information would advance the understanding of the general public as distinguished from a narrow segment of interested persons. *See, e.g.*, *Judicial Watch, Inc. v. U.S. Dep't of Justice*, 185 F. Supp. 2d 54, 62 (D.D.C. 2002) (concluding that requester's plan of allowing inspection of the records, faxing press releases, maintaining a web site, and appearing on radio and television programs demonstrated that disclosure would reach a reasonably broad audience of interested persons).

### B. PCRM has demonstrated, with reasonable specificity, that release of the requested information contribute significantly to public understanding of the operations or activities of the government

PCRM's requests demonstrated that the requested records would contribute significantly to public understanding of government operations or activities:

> It is also part of PCRM's mission to . . . educate the public about the people and decisions that lead to the government spending vast sums on animal research methods that are antiquated, not properly validated as required by law, and not reasonably reliable for making determinations relevant to human health.
> . . .
> [D]isclosure of the records is needed to understand the workings of ICCVAM. ICCVAM itself does not meet in public (as opposed to its workshops and expert panel meetings, which are open to the public). ICCVAM's internal documents, and the documents regarding ICCVAM held by its member agencies have never been made public. The documents we are seeking are just those that illuminate how the government operates ICCVAM exclusive of material that is currently available to the public.
> . . .
> ICCVAM has made remarkably little progress in doing what it was set up to do, "reduce, refine, or replace the use of animals in testing." This is undoubtedly caused, at least in part, because the agencies making up ICCVAM have selected representatives who do not appear to fully endorse ICCVAM's goals. How and why that happened is a question of critical importance to the public.

(A.R. at 00012–13, 16–17.) PCRM's position was, and remains, that the requested records, which are not yet available to the public, are necessary to educate the public about the reason for this failure to properly carry out government operations.[2]

Defendant misses the point of PCRM's request for records by arguing that disclosure of the requested records would not contribute to the public understanding simply because ICCVAM already provides certain information to the public. It is irrelevant that ICCVAM places information on Websites or in periodic reports (Def. Summ. J. Mot. 9–10, 15) because PCRM

---

[2] To the extent that PCRM has cited, in papers before this Court, information not part of the administrative record, such information is supplemental in nature, and its exclusion from consideration would neither cure ICCVAM's failure to perform it statutory duties nor dispose of Defendant's obligation to grant PCRM's fee waiver request. PCRM notes that it will include such information in any future FOIA correspondence with Defendant.

5

requested information not contained in those documents. (A.R. at 00012, 16.) Defendant also argues that disclosure of the requested records would not contribute significantly to the public understanding because, in Defendant's view, PCRM's critique of ICCVAM is unsupported by the record. (Def. Summ. J. Mot. 11, 14). Defendant's reliance on the administrative record in this regard is misplaced. To the extent that it deals with ICCVAM, the record consists solely of self-promoting materials published by ICCVAM or its member agencies. (A.R. at 00049–56, 58–121.) It contains no independent assessment, report, or hearing transcript conclusively demonstrating that ICCVAM has adhered at all to its statutory mission. The fact that the agency is doing *something* does not mean, *ipso facto*, that it is performing *all* of its mandatory duties. The inadequacy of the administrative record is further demonstrated by Defendant's abandonment of its argument that disclosure would benefit PCRM's commercial interests (Def. Summ. J. Mot. 12–13), a stance very much at odds with Defendant's original assertions (*see* A.R. at 00133.) This Court cannot determine from a review of the administrative record that ICCVAM is performing properly, as Defendant alleges, and thus cannot, on this ground, find that disclosure of the requested records would not contribute significantly to the public understanding.

    Defendant has strayed from the requirements of the FOIA by focusing considerable attention on PCRM's organizational mission and alleged affiliations in the analysis of whether disclosure would contribute significantly to the public understanding. (*See id.* at 00031, 33, 35–48, 57; Def. Summ. J. Mot. 9–10, 14, 16.) In doing so, Defendant has relied on a one-sided smattering of Websites, letters to the editor, and defamatory material from a front group for the restaurant industry. PCRM's mission and affiliations are irrelevant to an analysis of whether the *public* will find the information to be meaningful. The regulatory factors do not call for—or

6

allow—an agency to deny a fee waiver request simply because it disagrees with the requester's philosophy. Instead the regulation requires, and PCRM has demonstrated, that disclosure of the requested records will contribute significantly to the public understanding of government operations or activities. 45 C.F.R. § 5.45(b)(4).

## IV.     CONCLUSION

For all of the above stated reasons, and for the reasons stated in the Memorandum of Points and Authorities in Support of Plaintiff's Motion for Summary Judgment, this Court should grant PCRM's motion for summary judgment and deny Defendant's Motion for Summary Judgment.

Respectfully submitted,

/s/ Daniel Kinburn

_____
Daniel Kinburn
PHYSICIANS COMMITTEE FOR
 RESPONSIBLE MEDICINE
5100 Wisconsin Avenue, N.W., Suite 400
Washington, D.C. 20016
Attorney for Plaintiff
(202) 686-2210 ext. 308
(202) 686-2155 (fax)

Dated: January 5, 2007

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| PHYSICIANS COMMITTEE FOR RESPONSIBLE MEDICINE, | ) ) ) ) | |
| Plaintiff | ) ) | |
| v. | ) ) | Case No. 06-1392 JDB |
| DEPARTMENT OF HEALTH AND HUMAN SERVICES, | ) ) ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
STATEMENT OF MATERIAL FACTS**

Pursuant to Local Rule 7.1(h), Plaintiff responds to Defendant's statement of material facts as to which it claims that there is no genuine issue.

¶ 1. NIEHS received a FOIA request from plaintiff, dated August 26, 2005, which sought various records related to ICCVAM and which also sought a fee waiver.

Response: Admitted.

¶ 2. FDA received a largely similar FOIA request from plaintiff, also dated August 26, 2005.

Response: Admitted.

¶ 3. Both FOIA requests summarize the legal requirements for obtaining a fee waiver and assert in conclusory terms that plaintiff meets these requirements.

Response: This paragraph is Defendant's characterization of the FOIA requests, and the Court is respectfully referred to the letters, which are the best evidence of their contents. (*See*

A.R. at 00011–13, 15–17.) It is admitted that both FOIA requests summarize the legal requirements for obtaining a fee waiver.

¶ 4. In addition to these bare assertions, the FOIA requests further argued that the public interest would be served by a response to the two requests because the purpose of the requests is to determine how ICCVAM is carrying out its statutory mandate to "reduce, refine, or replace the use of animals in testing," but no factual support for this contention was offered by plaintiff.

Response: This paragraph is defendant's characterization of the FOIA requests, and the Court is respectfully referred to the letters, which are the best evidence of their contents. (*See id.*) It is admitted that both FOIA requests argued that the public interest would be served by disclosure of the requested records.

¶ 4. [This is the second paragraph that is numbered 4.] As further support for the fee waiver requests, plaintiff argued that disclosure of the records was needed to understand the workings of ICCVAM, although plaintiff conceded that ICCVAM's workgroups and expert panel meetings are open to the public.

Response: Admitted.

¶ 5. ICCVAM also maintains an internet site where it posts significant materials relating to its activities.

Response: It is admitted that ICCVAM maintains such a site, but it is denied that the contents constitute "significant materials."

¶ 6. ICCVAM also releases periodic public reports that address the nature of its activities and its accomplishments.

Response: Admitted, except that it is denied that these "periodic public reports" contain records requested by PCRM.

2

¶ 7. Plaintiff's FOIA requests asserted that ICCVAM had made "remarkably little progress in doing what it was set up to do, 'reduce, refine, or replace the use of animals in testing,'" but no information or material was provided to support this assertion or to support plaintiff's further assertions that this state of affairs was, at least in part, because "the agencies making up ICCVAM have selected representatives who do not appear to fully endorse ICCVAM's goals."

Response: This paragraph is Defendant's characterization of the FOIA requests, and the Court is respectfully referred to the letters, which are the best evidence of their contents. (*See id.*)

¶ 8. Plaintiff offered no plan to disclose the requested material to the general public; rather it stated its plan to disclose the material to its physicians and lay members through its quarterly publication "Good Medicine."

Response: It is admitted that PCRM stated its plan to disclose the material to its physicians and lay members through its quarterly publication, "Good Medicine." It is denied that PCRM offered no plan to disclose the requested material to the general public. The Court is respectfully referred to the requests, wherein PCRM stated that it has a "staff of writers and editor skilled at effectively conveying information to the public." (*Id.* at 00013, 00017.) The Court is further respectfully referred to PCRM's "Freedom of Information Act Appeal" letter, dated February 9, 2006, wherein PCRM stated,

> We hope and expect that the information will be picked by other media outlets, and will send out appropriate press releases for that purpose to the entire media spectrum. Thus, PCRM's goal is to promulgate information as widely as possible, in order to prod ICCVAM to promote its congressionally set mission more vigorously and effectively.

(*Id.* at 00136.)

3

¶ 9. Plaintiff's requests were referred to the Freedom of Information Office at the Public Health Service for a resolution of the fee waiver requests.

Response: Admitted.

¶ 10. The Public Health Service's FOIA officer estimated that conducting the search and duplication for the two requests would require about $100,000.

Response: Denied in substantial part. The Court is respectfully referred to the administrative record, which shows that after NIH provided an estimation of approximately $52,000 (*id.* at 00022, 00034), the FOIA officer merely asserted, without any investigation, that FDA's cost "would be just as hefty" (*id.* at 00034).

¶ 11. Review of plaintiff's requests and other information available to defendant showed that plaintiff, although asserting that it was "a non-profit organization that promotes effective, ethical and compassionate scientific research," is an animal rights group with close ties to People for the Ethical Treatment of Animals.

Response: Denied in substantial part. It is admitted that PCRM characterized itself as "a non-profit organization that promotes effective, ethical and compassionate scientific research." (*Id.* at 00012–13, 16–17.) The Court is respectfully referred to the FOIA requests (*see id.* at 00011–13, 15–17) and PCRM's Website (*see id.* at 00126–27) for a proper characterization of PCRM's activities.

¶ 12. Plaintiff presented no specific information that plaintiff had as its goal general education of the public as opposed to its members, and since plaintiff's members are those who share the group's animal-rights agenda, this is not educating the general public.

Response: Denied. The Court is respectfully referred to the requests, wherein PCRM stated that it has a "staff of writers and editor skilled at effectively conveying information to the

4

public." (*Id.* at 00013, 17.) The Court is further respectfully referred to PCRM's "Freedom of Information Act Appeal" letter, dated February 9, 2006, wherein PCRM stated,

> We hope and expect that the information will be picked by other media outlets, and will send out appropriate press releases for that purpose to the entire media spectrum. Thus, PCRM's goal is to promulgate information as widely as possible, in order to prod ICCVAM to promote its congressionally set mission more vigorously and effectively.

(*Id.* at 00136.)

¶ 13. Plaintiff did not proffer any viable, concrete plans to disseminate the requested information to the general public and did not identify any specific increase in public understanding that would result from such dissemination.

Response: Denied. This paragraph is Defendant's characterization of PCRM's request letters, and the Court is respectfully referred to the letters, which are the best evidence of their contents. (*See id.* at 00011–13, 15–17.)

¶ 14. On January 31, 2006, the Freedom of Information Officer for the Public Health Service issued a denial of plaintiff's fee waiver request.

Response: Admitted.

¶ 15. The denial stated that plaintiff had not provided a convincing or substantial argument to justify a fee waiver, that the requester's statements that release of the information was in the public interest was not a sufficient basis upon which to grant a waiver of fees, and that the requester had not demonstrated with any specificity how disclosure of the information was likely to contribute significantly to the public's understanding of the operations or activities of the government or how disclosure would reveal any meaningful information about government operations or activities that were not already public knowledge.

5

Response: This paragraph is Defendant's characterization of its letter denying PCRM's request for a fee waiver, and the Court is respectfully referred to that letter, which is the best evidence of its contents. (*See id.* at 00019–20.)

¶ 16. The denial further stated that the requester's statement that it intended to share the information with its own members indicated that the release of the requested documents would not benefit the general public, but rather a targeted audience.

Response: This paragraph is Defendant's characterization of its letter denying PCRM's request for a fee waiver, and the Court is respectfully referred to that letter, which is the best evidence of its contents. (*See id.*)

¶ 17. [P]laintiff appealed the fee waiver denial to HHS's Deputy Assistant Secretary for Public Affairs/Media, but the appeal letter did not make any new arguments. It merely incorporated arguments that had been made in the initial FOIA requests and stated that it hoped and expected that the information it obtained would be picked up by other media outlets.

Response: This paragraph is Defendant's characterization of PCRM's appeal letter, and the Court is respectfully referred to that letter, which is the best evidence of its contents. (*See id.* at 00135–36.) It is admitted that PCRM appealed the fee waiver denial and that the appeal letter incorporated PCRM's prior arguments. It is denied that the appeal did nothing more than "incorporate[] arguments that had been made in the initial FOIA requests and state[] that [PCRM] hoped and expected that the information it obtained would be picked up by other media outlets."

¶ 18. HHS's appellate authority affirmed the denial of the fee waiver requests by a letter dated May 17, 2006, stating that the requester had not provided a convincing or substantial argument to justify a waiver of fees.

<u>Response</u>: Admitted.

                                            Respectfully submitted,

                                            /s/ Daniel Kinburn

                                            _____
                                            Daniel Kinburn
                                            PHYSICIANS COMMITTEE FOR
                                             RESPONSIBLE MEDICINE
                                            5100 Wisconsin Avenue, N.W., Suite 400
                                            Washington, D.C. 20016
                                            Attorney for Plaintiff
                                            (202) 686-2210 ext. 308
                                            (202) 686-2155 (fax)

Dated: January 5, 2007